**LEWIS BRISBOIS BISGAARD & SMITH** LLP
Robert A. Ford, SB# 056311
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

Attorneys for Defendants
Cornell Corrections of California, Inc., erroneously
served and sued herein as Cornell Corporation, Inc.,
Maria Richard, Mike Reed, Dora Ford, Judith
Henderson, Melody Daniel, and Rose Hughes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT COURT OF CALIFORNIA

| | |
|---|---|
| JORDAN ROSENBERG, | ) CASE NO. CV 07-4690 PJH |
| Plaintiff, | ) |
| | ) **DEFENDANTS' MOTION TO DISMISS;** |
| v. | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES AND SUPPORTING** |
| CORNELL CORPORATION, INC., AND | ) **DECLARATIONS** |
| ASSOCIATED COMPANIES, MARIA | ) |
| RICHARD, DIRECTOR, MIKE REED, | ) |
| DIRECTOR, DORA FORD, CASE | ) |
| MANAGER, JUDITH HENDERSON, JOB | ) |
| DEVELOPER, MELODY DANIEL, JOB | ) |
| DEVELOPER, ROSE HUGHES, STAFF, | ) |
| DOES 1-100, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Defendants' respectfully submit this motion to dismiss plaintiff's first amended complaint

for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal

Rules of Civil Procedure.

**I.    INTRODUCTION**

**A.    STATEMENT OF FACTS**

Plaintiff was housed in a halfway house located at 111 Taylor Street in San Francisco,

California from October 24, 2006 until January 26, 2007. Said halfway house is operated by

Defendant Cornell Corrections of California, Inc. (Declaration of Maria Richard) Plaintiff alleges

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

1    that his civil rights were violated by employees at the Taylor Street facility. Specifically, plaintiff

2    seeks combined monetary relief in the amount of $10,000,000.00 for alleged violations of his

3    rights under the US Constitution, federal law, and federal regulations. (Plaintiff's Complaint, page

4    7, line 16) Plaintiff filed this first amended "Bivens" action against Defendant, Cornell

5    Corrections of California, Inc. on May 15, 2007. (Plaintiff's Complaint, page 2, lines10-12)

6    **B.**    **PLAINTIFF'S ALLEGATIONS**

7          Plaintiff makes ten allegations against Defendant in his first amended complaint. First,

8    plaintiff alleges that he was forbidden to leave the halfway house without permission and denied

9    access to the law library. (Plaintiff's Complaint, page 3, lines 1-12) Second, plaintiff alleges that

10    defendant engaged in unsafe fire drill practices which put plaintiff in harms way. (Plaintiff's

11    Complaint, page 3, lines 13-18, page 4, lines 1-2) Third, plaintiff alleges that defendant punished

12    him for not following defendant's "unsafe" fire drill practices. (Plaintiff's Complaint, page 4,

13    lines 3-9) Fourth, plaintiff alleges that he was given ten hours of punishment duties that were not

14    properly credited to his file, which resulted in him being punished in an arbitrary and unlimited

15    manner. (Plaintiff's Complaint, page 4, lines 10-18) Fifth, plaintiff alleges defendant confiscated

16    his medicines and withheld them for ten days without reason. (Plaintiff's Complaint, page 4, lines

17    1-6) Sixth, plaintiff alleges that he was housed by defendants in a room with bedbugs, in violation

18    of his right to live in a clean facility. (Plaintiff's Complaint, page 5, lines 7-11) Seventh, plaintiff

19    alleges that he was improperly limited to one hour a day of recreation time. (Plaintiff's Complaint,

20    page 5, lines 12-18) Eighth, plaintiff alleges that Cornell staff withheld job search information

21    from him, making it impossible for him to secure forty hours of employment a week. (Plaintiff's

22    Complaint, page 6, lines 3-19) Ninth, plaintiff alleges that he was denied the right to purchase

23    basic hygiene items. (Plaintiff's Complaint, page 7, lines 1-6) Plaintiff's tenth and final allegation

24    asserts that he was repeatedly treated "in an arbitrary manner not prescribed by rules and

25    regulations consistent with the treatment accorded other residents." (Plaintiff's Complaint, page 7,

26    lines 7-10)

27

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

# II.    ARGUMENT

## A.    PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AND HIS PETITION MUST BE DISMISSED

"A federal prisoner seeking both damages and injunctive relief cannot bring a Bivens action until he or she has first exhausted any available administrative remedies." *Terrell v. R.D. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991). The exhaustion requirement promotes:

> (1) deference to Congress' decision, that independent administrative tribunals, not courts, should serve as the initial forum for dispute resolution; (2) respect for administrative autonomy by minimizing unnecessary judicial intervention; and (3) judicial economy by resolving complaints or setting forth findings of fact. *Id*. at 1015.

In *Terrell*, the Court dismissed plaintiff's petition for failure to properly exhaust of all the Administrative Remedies. *Id*. at 1015. Here, as in *Terrell*, plaintiff has failed to properly exhaust of all the Administrative Remedies available to him. Page twelve of the BOP Resident Program Handbook for the Cornell Corrections, Inc. states in relevant part:

> "RESIDENT GRIEVANCE PROCEDURES: If a resident feels they were treated unfairly by staff, or have received unfair and/or inordinate punishment, they may appeal through the Bureau of Prisons Administrative Remedy Procedures" (Declaration of Maria Richard).

Here, plaintiff made no attempt to comply with the Administrative Remedy Procedures. As such, his complaint must be dismissed based on the holding in *Terrell*.

## B.    A BIVENS CAUSE OF ACTION IS NOT AVAILABLE AGAINST A PRIVATE ENTITY OR FEDERAL AGENCY

A *Bivens* cause of action is not available against private entities, see *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001), or federal agencies, see *FDIC v. Meyer*, 510 U.S. 471, 486 (1994).

In *Malesko*, a federal inmate brought suit against a privately operated halfway house under contract with the Federal Bureau of Prisons to house federal inmates. *Id*. at 61. The inmate alleged that his constitutional rights were violated when staff forced him to take the stairs to his room on the fifth floor and in doing so the inmate suffered a heart attack. *Id*. The court dismissed

4849-4857-2929.1

-3-

1  the inmate's petition on the grounds that there is no "implied private right of action, pursuant to

2  *Bivens*, for damage against private entities that engaged in alleged constitutional deprivations

3  while acting under color of federal law." *Correctional Services, supra*, citing *Hammons v.*

4  *Norfolk Southern Corp.*, 156 F.3d 701.

5          The facts in *Malesko* are directly analogous to the facts before this Court. Jordan

6  Rosenberg is a federal inmate housed in a privately owned and operated halfway house, run by

7  defendant Cornell Corrections of California, Inc.. Defendant is under contract with the Federal

8  Bureau of Prisons and operates under color of federal law. Based on these facts alone, and the

9  holding in *Malesko*, this Court should dismiss plaintiff's petition.

10  **C.    RESPONDEAT SUPERIOR IS INAPPLICABLE IN BIVENS ACTIONS**

11          The doctrine of respondeat superior is inapplicable in *Bivens* actions. *Terrell v. Brewer*,

12  935 F.2d 1015, 1018 (9th Cir. 1991). In *Terrell*, an inmate alleged cruel and unusual punishment

13  when a correctional officer purposely closed a food-slot on his hand, allegedly causing profuse

14  bleeding. *Id.* at 1017. The court dismissed the inmate's cause of action against the Warden of the

15  prison facility finding that there is no respondeat superior in *Bivens* actions. *Id.* at 1018.

16          To the extent that plaintiff's allegations assert misconduct against staff members at the

17  halfway house, Cornell Corrections of California, Inc. cannot be held responsible under the

18  doctrine of respondeat superior because it is inapplicable in *Bivens* actions. See *Terrell v. Brewer*,

19  935 F.2d 1015 (9th Cir. 1991). Plaintiff asserts misconduct by the staff at the halfway house in all

20  of the allegations outlined in his complaint. Therefore, the allegations must be dismissed as to

21  defendant Cornell Corrections of California, Inc. as there is no recognized doctrine of respondeat

22  superior in *Bivens* actions.

23  **D.    EMPLOYEES OF CORNELL CORRECTIONS OF CALIFORNIA, INC. HAVE**
24  **QUALIFIED IMMUNITY**

25          "The doctrine of qualified immunity protects government officials performing

26  discretionary functions...from liability for civil damages insofar as their conduct does not violate

27  clearly established statutory or constitutional rights of which a reasonable person would have

28  known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Public officials are also generally

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

1   covered under the doctrine and protected from civil liability unless their actions violate law that is

2   clearly established. *Id.* at 819.

3       There is a two part test to determine whether an individual is entitled to qualified

4   immunity. The court considers,

> (1) ...whether the law governing the official's conduct was clearly
> established. If it was not clearly established, the official is entitled
> to immunity from suit. (2) If the law was clearly established, we
> proceed to ask if under that law, a reasonable official could have
> believed the conduct was lawful. Therefore, an official is denied
> qualified immunity only if the law was clearly established and a
> reasonable official could not have believed the conduct was lawful."
> *Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997).

10      In *Somers v. Thurman*, "a male inmate brought civil rights action against female guards

11  and prison officials, alleging that visual body cavity searches performed by guards, as well as

12  being watched by them while showering naked, violated his constitutional rights under both the

13  Fourth and Eighth Amendments." *Id.* at 614. The Court concluded that the guards were protected

14  by qualified immunity from the Fourth Amendment claims because the inmate did not have a

15  clearly established right to be free from cavity searches conducted by the opposite sex. *Id.* at 622.

16  The court also found that the guards had qualified immunity from Eighth Amendment claims

17  because their conduct did not rise to the level of cruel and unusual punishment. *Id.* at 622.

18      The alleged constitutional violations that plaintiff, Jordan Rosenberg, asserts against the

19  employees of Cornell Corrections of California, Inc. do not rely on "clearly established rights." It

20  is accepted by society that prisoners and parolees have limited Fourth Amendment rights given

21  that the right to privacy is fundamentally incompatible with close and continual surveillance. *Id.* at

22  617. Plaintiff, was aware that his housing at Cornell Corrections in San Francisco was contingent

23  upon his cooperation with the BOP Resident Program Handbook which outlines living restrictions,

24  curfews, rules and regulations. (Declaration of Maria Richard) In the Welcome Statement of the

25  Program Handbook, participants are informed that the facility provides "freedom within limits"

26  and that participants are "allotted time away from the facility" based on a level system.

27  (Declaration of Maria Richard) Jordan Rosenberg was well aware that his personal freedoms

28  would be limited while at the Cornell Corrections facility and that his privileges were greatly

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4849-4857-2929.1                                -5-

1  within the discretion of the staff based on the guidelines outlined in the Program Handbook.

2  (Declaration of Maria Richard)

3          The Cornell staff members had discretion to forbid plaintiff from leaving the halfway

4  house, to require him to participate in fire drills, to punish him for failure to follow policies and

5  staff and staff orders, to restrict his recreation time and to confiscate his personal belongings.  (Declaration

6  of Maria Richard)  Furthermore, none of these actions violate "clearly established" constitutional

7  rights.  To the contrary, it is clear that all of these actions were within the discretion of the Cornell

8  facility staff and were necessary to ensure the success of the program.  (Declaration of Maria

9  Richard)  The program at Cornell is a pre-release program designed to help transition participants

10  from a very closed and restricted system back into the community.  (Declaration of Maria Richard)

11  The pre-release program is a privilege that is not free from restrictions.  (Declaration of Maria

12  Richard)

13          The alleged wrongdoings of the Cornell employees did not violate any "clearly

14  established" constitutional rights and were well within discretion of staff as outlined in the BOP

15  handbook.   Therefore, petitioner's claims as to defendant employees must be dismissed under the

16  doctrine of qualified immunity.

17  **E.      PLAINTIFF WAS NOT SUBJECTED TO CRUEL AND UNUSUAL
           PUNISHMENT AS DEFINED BY THE COURTS**

18

19          In considering a claim for an Eighth Amendment violation the court must ask:

20                  (1) if the officials acted with sufficiently culpable state of mind; and
                    (2) if the alleged wrongdoing was objectively harmful enough to

21                  establish a constitutional violation.  *Id*. at 622.

22  The Court in *Somers*, held that the inmate's claim failed both the "subjective" and the "objective"

23  components of the above test.  *Id.*  Plaintiff's allegations in *Somers* merely stated that the guards

24  pointed and laughed among themselves while watching his cavity search.  This conduct did not

25  rise to the level of an Eighth Amendment violation because it is  "obduracy and wantonness, not

26  inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and

27  Unusual Punishment Clause."  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

28

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

1  Plaintiff's allegation that defendant employees punished him and then failed to properly

2  credit his file which "resulted in him being punished in an arbitrary and unlimited manner" does

3  not rise to the level of "obduracy and wantonness" required by the court in *Wilson*. (see Plaintiff's

4  Complaint, page 4, lines 10-18) Without a showing that defendants had "sufficiently culpable state

5  of mind" plaintiff cannot properly seek recovery for a violation under the Eighth Amendment.

6  Defendant employees are protected under the doctrine of qualified immunity and plaintiff

7  has failed to allege a recognized Eighth Amendment violation, as such, defendant employees

8  request that plaintiff's claims be dismissed.

### III.  CONCLUSION

10  For the foregoing reasons, defendants respectfully request that plaintiff's first amended

11  complaint be dismissed with prejudice as failing to state a claim for which relief can be granted

12  under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

14  DATED:  November 9, 2007

LEWIS BRISBOIS BISGAARD & SMITH LLP

By  ROBERT A. FORD
Attorneys for Defendants

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

**IV.**

## DECLARATION OF MARIA RICHARD
## IN SUPPORT OF MOTION TO DISMISS

I, MARIA RICHARD, declare:

1.      I have been employed as Facility Director at 111 Taylor Street, a Cornell Corrections, Inc. facility, for three years. My duties include overseeing all operations at the Taylor Street facility including staff and management of the Bureau of Prisons contract.

2.      I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify thereto.

3.      Jordan Rosenberg was housed at 111 Taylor Street in San Francisco, California from October 24, 2006 until January 26, 2007. The Taylor Street halfway house is operated by Cornell Corrections of California, Inc.

4.      Attached as **EXHIBIT "A"** is a true and correct copy of the BOP Resident Handbook used by Cornell Corrections, Inc. at all times while Jordan Rosenberg was housed at the facility.

5.      Page twelve of the BOP Resident Handbook outlines the resident grievance procedures in place during Jordan Rosenberg's residency at the Cornell facility.

6.      All participants of the Cornell program are given a BOP Resident Program Handbook which outlines living restrictions, curfews, rules and regulations.

7.      In the Welcome Statement of the Program Handbook, participants are informed that the facility provides "freedom within limits" and that participants are "allotted time away from the facility" based on a level system. (See Exhibit "A", pages 1-2)

8.      Jordan Rosenberg was aware that his personal freedoms would be limited while at the Cornell Corrections facility and that his privileges were within the discretion of the staff based on the guidelines outlined in the Program Handbook.

9.      Cornell staff members had discretion to forbid Jordan Rosenberg from leaving the halfway house, to require him to participate in fire drills, to punish him for failure to follow

**DEFENDANTS' MOTION TO DISMISS**

1 | policies and staff orders, to restrict his recreation time and to confiscate his personal belongings.

2 | These restrictions allow staff to run the facility in an orderly fashion.

3 |      10.     The program at Cornell is a pre-release program which is designed to help

4 | transition participants from a very closed and restricted system back into the community.

5 |      11.     The pre-release program at Cornell is a privilege that is not free from

6 | restrictions.

7 |      I declare under penalty of perjury under the laws of the United States of America that the

8 | foregoing is true and correct and that this declaration was executed this 6th day of November, 2007,

9 | in San Francisco, California.

10

11 | _Maria N. Richard_
    MARIA RICHARD

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

Exhibit A

# CORNELL CORRECTIONS, INC.



## BOP RESIDENT PROGRAM HANDBOOK

San Francisco Taylor Street Facility
111 Taylor Street
San Francisco, California 94102
(415) 346-9769

# TABLE OF CONTENTS (Continued)

**SECTION**                                                                                    **PAGE**

RESIDENT LEVEL SYSTEM ................................................................................................14
   Community Corrections Component Level 1 .....................................................................14
   Pre-Release Component Level 2 ......................................................................................15
   Pre-Release Component Level 3 ......................................................................................16
   Pre-Release Component Level 4 ......................................................................................17
   Home Confinement Component Level 5 ...........................................................................18
   Release Procedures ........................................................................................................18

RULES AND REGULATIONS ...........................................................................................19
   Safety and Sanitation.......................................................................................................19
   Facility Cleanliness and House Assignments ....................................................................19
   Regulation for Visitors .....................................................................................................20
   Resident rules of Conduct and Resident Authority ..........................................................20
   Contractual Agreements .................................................................................................21
   Sign-In/Sign-Out Procedures ..........................................................................................21
   Appointments .................................................................................................................21

FEDERAL BUREAU OF PRISONS PROHIBITED ACTS .......................................................22

EMERGENCY PLAN ........................................................................................................34
   Fire ................................................................................................................................34
   Earthquake .....................................................................................................................35
   Severe Winds or Weather Conditions...............................................................................36

Your Case Manager will work closely with you in establishing short and long term goals, in budget planning, and in solving any problems within your program. Your Case Manager is required to make available a minimum of one-half hour of counseling per week. Additionally, you may be required to attend monthly town hall meetings, as well as selected group counseling sessions. Outside speakers from community agencies will be invited on occasion to discuss current topics. Community referrals to outside agencies such as the Department of Vocational Rehabilitation, Employment Development Department, and Job Training Placement Association will be made to assist each resident in meeting individual goals. Your Case Manager will arrange a team meeting with each resident and their assigned U.S. Probation Officer for the purpose of program planning. Cornell Pre-Release will also provide in-house programs such as Alcoholics Anonymous/Narcotics Anonymous (A.A./N.A.), literacy and General Education Diploma (G.E.D.) courses, group counseling and community education speakers.

While in this program, it is important to remember that you are still in Federal custody. Many of the rules and guidelines, which were enforced at the institution, are observed at this facility.

## SUBSISTENCE

Residents will be required to pay 25% of their gross income as a condition of their placement at the facility. This will offset the cost of confinement to the Bureau of Prisons (BOP). In individual cases with very unusual circumstances, CCM's may waive or reduce resident subsistence payments. Such cases must be fully documented, and it is the responsibility of the resident to provide this information. All residents will be charged from the first day of work until a decision for reduction is made by the (BOP).

## MAIL

The staff of Cornell Pre-Release has an obligation not to accept resident's correspondence when contraband is suspected, or to receive unauthorized correspondence. Any package arriving at the facility will be opened by the resident in front of staff for inspection of contraband.

> **ANY CORRESPONDENCE RECEIVED WHERE CONTRABAND IS SUSPECTED, OR CORRESPONDENCE BETWEEN RESIDENTS AND CURRENT OFFENDERS, EX-OFFENDERS, AND THOSE UNDER COURT SUPERVISION, IS CONSIDERED TO BE UNAUTHORIZED CORRESPONDENCE WILL BE AUTOMATICALLY RETURNED THROUGH THE POSTAL SERVICE. ALL AUTHORIZED MAIL WILL BE GIVEN DIRECTLY TO THE RESIDENT UPON DELIVERY.**

## RESIDENT ACCOUNTABILITY AND RESPONSIBILITY

It is the responsibility of the Cornell Pre-Release staff to be accountable for every resident at all times. The following regulation must be strictly adhered to:

**Unemployed:** Those residents without jobs must sign out each day to look for work. They will be required to submit a Daily Accountability Report to the Job Developer, to account for their day's activities. Periodic checks will be made to confirm that the resident actually went to the places listed. (Refer to level system employment policy for further details).

**Employed:** Those residents serving a sentence must notify a prospective employer of his/her status in the Cornell Pre-Release program. The employer must understand that staff will make employment verification.

# MOTHERS AND INFANTS

## PROGRAM REFERRALS

All approved placements in the Residential Program for Pregnant Federal Offenders will be processed through the CCM. The Facility Director will not accept any resident who is not referred by the CCM.

## SERVICES AND PROGRAMS

Individual rooms will be provided for to all participants in the Residential Program for Pregnant Offenders. Each room will provide adequate space for mother and infant, and be equipped with a bed, dresser or desk, chair, crib, refrigerator, closet, sink area, and private bathroom with toilet and shower facilities. Residents participating will be permitted to decorate their living quarters to further enhance a home environment.

The participants in the program will only be allowed to leave the facility when accompanied by qualified staff or the MINT program coordinator. Special passes or furloughs may be available to the program participants, for the purpose of placing the infants with relatives or in foster care. Cornell Pre-Release staff will secure prior approval from the CCM for all passes and furlough considerations.

Residents transferring from the institution to participate in the Residential Program for Pregnant Offenders will not be eligible to seek or hold gainful employment. Therefore, they will not be required to pay subsistence.

Residents in the Residential Program for Pregnant Offenders will not ordinarily be eligible for passes. However, exceptions will be made with the approval of the CCM, and will be at the expense of the resident. All participants will be notified of the program restrictions at the time of orientation.

Residents in the Residential Program for Pregnant Offenders will not ordinarily be eligible for furloughs. However, exceptions will be considered with the approval of the CCM and the institution in order to place the baby with relatives or in foster care, and will be at the expense of the resident. All participants will be notified of the program restrictions at the time of orientation.

Cornell Pre-Release staff will transport and accompany participating residents to and from medical appointments, childbirth classes, nutrition classes, and other community activities not available at the facility.

The MINT program coordinator will conduct regular individual counseling sessions with each program participant. The discussion will include but not be limited to postpartum bonding, custody transfer planning and preparations, overcoming program plan obstacles or set backs, and self image issues.

In addition to individual counseling sessions, regular meetings will be scheduled between each mother and her chosen family guardian or foster parents. Topics for discussion will include pre-

# COMMUNITY CORRECTIONS, PRE-RELEASE & HOME CONFINEMENT COMPONENTS

## PROCEDURES

Per BOP policy, Taylor Street BOP Center provides three program components. These are:

**Community Corrections Component** – This is the most restrictive of the three program components used at the Taylor Street BOP Center. Most residents are assigned to this component upon arrival at this facility. Except for employment and other authorized activities (i.e., seeking employment, attending religious services, etc.), residents in the community corrections component are restricted to the facility at all times. Generally, residents in this program component are not eligible for passes or furloughs.

**Pre-Release Component** – Residents in this component have demonstrated the ability to obtain and keep full-time gainful employment and are considered by their Case Managers, and the Facility Director to be moving steadily and successfully though their individual program plans. The pre-release component allows residents to earn privileges such as passes, the opportunity to volunteer outside the Center in community projects, etc. This program component also allows residents more unscheduled time outside of work hours, but also required residents to demonstrate their ability to manage their free time in a positive way. The primary objective of this program component is to help the resident make a successful transition from the institutional setting to the community or as a resource while under supervision. Residents will be granted time in the community on a graduated basis.

**Home Confinement Component** – This is the least restrictive program component available at Taylor Street BOP Center. In this component, a resident permitted to live away from the Center in an authorized private residence, although the resident is still considered to be held in Federal custody until officially released. Home confinement is both a time of testing and an opportunity for residents to assume increasing levels of personal responsibility. Compliance with the conditions of home confinement may be monitored either by electronic monitoring equipment or by regular telephone and in-person contacts by Cornell supervisory staff.

Because rules governing a resident's behavior and lifestyle in the home confinement component allow major changes in the resident's environment, specific program objectives are expected to be accomplished. Residents of the Center who are eligible will be considered for home confinement. Upon approval by the CCM, they will be placed in this program component.

Residents in the community corrections and pre-release components are housed in the same facility, but the privileges and supervision requirements are different.

**Recreation** - Limited to one hour per day through sign-out procedures and in the immediate vicinity of the Center.

**Visiting** – Limited to the facility.

# CURFEW AND PASS POLICY

## CURFEW

Except for employment, pass and furlough residents must be in the Center at the latest by 9:00 p.m. each evening. The Facility Director may make specific exceptions in compelling situations.

## PASS

Residents who are away from the Center on pass will inform Cornell staff of their whereabouts at all times. Unless authorized in advance by the Facility Director, residents on pass must remain at the approved pass location from 9:00 p.m. each evening to 6:00 a.m. each morning of the pass. **Passes are a privilege, not a right of residents**. A day pass is defined as <u>up to</u> 12 hours in the community (9:00 a.m. - 9:00 p.m.). Overnight passes and weekend passes begin at 4:00 p.m. and end at 9:00 p.m. Pass locations must be within a traveling distance of 100 miles, or less, from the facility, and must be geographically located in the Northern District. Refer to level system for pass requirements.

Pass applications must be completed with the Case Manager during the weekly counseling sessions and submitted by Wednesday morning for consideration. **Any requests turned in past this deadline will be denied.** The Facility Director will have final approval. The first time a resident requests a pass, he/she must require that his/her pass sponsor meet with the Case Manager and sign an agreement that they understand the pass conditions, and will help the resident *abide by those conditions.* All passes are subject to approval pending completion of prerequisites, which are designated by the resident's Case Manager. The Statement of Work requires that the Case Manager or U.S. Probation Officer visit and approve the pass site. Telephonic verifications will be conducted by Cornell staff throughout the duration of each pass. Pass locations must have a telephone, which does not have call forwarding. Each resident is responsible to contact staff if he/she is going to be away from the pass location.

## FURLOUGH POLICY

A furlough is an authorized absence from the facility for between 3 and 7 days with a definite purpose (i.e., attending the funeral of a relative, obtaining necessary medical treatment, and to develop employment or release plans) for an established period of time. Two weeks advance notice must be given to the Case Manager to be considered for the furlough. There will be no exception to this rule. Final approval will be granted by the Facility Director and CCM.

If drug usage is confirmed by the laboratory, the resident will either be returned to close custody or dismissed from the program, dependent on placement status. If alcohol use is confirmed, disciplinary action will be taken. At a minimum, one-month restriction to the facility will result. Additional sanctions may be imposed. Any subsequent positive test for alcohol will result in return to close custody or dismissal from the program, dependent on placement status.

If a resident is required to give a urine sample, and does not produce a test within two hours, it may be considered a stall, and disciplinary action may be taken against the resident. If a resident refuses to give either a urine or breath test, disciplinary action will follow.

## DISCIPLINARY ACTION

If any of the facility rules and regulations found in this handbook, or if any prohibited acts found listed in the following pages are disregarded, a formal incident report may be written by any staff member. An investigation of the charges and a committee hearing will follow, within required time limits. Cornell Pre-Release uses an informal disciplinary system to deal with minor infractions. This informal report will not be forwarded to the BOP, but will be handled internally by Cornell staff and the Facility Director.

## RESIDENT GRIEVANCE PROCEDURES

If a resident feels they were treated unfairly by staff, or have received unfair and/or inordinate punishment, they may appeal through the Bureau of Prisons Administrative Remedy Procedures. These are posted in the facility for resident review.

The procedures for appealing Minor and Major Sanctions are reviewed below:

**Minor Sanctions**

For Minor Sanctions imposed by the Facility Director, the resident may appeal to the CCM. If dissatisfied with the CCM's response, the resident may appeal to the BOP Regional Director in Dublin, California. If the resident fails to find a resolution, they may further appeal to the General Counsel in Washington, D.C. The General Counsel is the final level of appeal in the BOP. Please review the Bureau of Prisons Administrative Remedy Procedures for appropriate filing time frames and required BOP forms.

**Major Sanctions**

If a resident chooses to appeal a Major Disciplinary Sanction, the resident may do so by appealing directly to the Regional Director in Dublin, California. This must be done within 20 calendar days of receiving written notification of the sanctions imposed by the Direct Hearing Officer. Further appeal may be made to the General Counsel if dissatisfied with the Regional Director's decision. Please review the Bureau of Prisons Administrative Remedy Procedures for appropriate filing time frames and required BOP forms.

# RESIDENT LEVEL SYSTEM

## Community Corrections Component
## (Punitive Sanction)

### Level 1

**SIGN OUTS:**              Medical, Religious, Programmatic (i.e., Life Skills and Substance Abuse Classes)

ALL SIGN OUTS MUST BE PRE-APPROVED BY THE CASE MANAGER

**RESTRICTIONS:**          Recreation and Visiting In-house only, No Job Search or Employment

**RESPONSIBILITIES:**
- Weekly Case Manager Meetings
- Weekly Substance Abuse Counseling Meetings (In-house or Community)
- Substance Abuse Education Hours (8 Hours)
- Family/Life Skills Hours (12 Hours)
- Household Chores

## Pre-Release Component

### Level 3

**SIGN OUTS:**         Medical, Religious, Programmatic (i.e. Life Skills and Substance Abuse Classes, Job Search/Employment)

ALL SIGN OUTS MUST BE PRE-APPROVED BY THE CASE MANAGER OR JOB DEVELOPER

Access to Community for Social Passes, (i.e., Visiting with Family, Shopping and Movies)

4-HOUR SIGN OUT PER WEEK PRE-APPROVED BY CASE MANAGER ON COMMUNITY PASS FORM WITH ADDRESS AND PHONE NUMBER.

**DURATION:**          Minimum of Two Weeks

**RESPONSIBILITIES:**  Continue All Responsibilities of Level 1 and Level 2. Establish Pass Sponsor and Location.

\*\*Must Secure Employment Prior to Placement on Level 3 or higher.

## Home Confinement Component

### Level 5

## HOME CONFINEMENT

Residents in this program component are permitted to reside at home and work at gainful employment while continuing in official detention status at the CCC. This level is only appropriate for institution transfers.

The Case Manager may recommend approval of Home Confinement when the resident is in compliance with all program requirements and the resident has a developed release plan that has been approved by the U.S. Probation Officer.

## RELEASE PROCEDURES

Upon releasing from the center, you are required to turn in all linens and keys issued to you on your arrival. You are to *thoroughly* clean your room before you leave the facility. A charge will be made for all unreturned items.

*Thirty days prior to your release date, you will be required to submit a formal release plan* prepared by you and your Case Manager. This release plan will be forwarded to the Probation Officer for approval. This includes acceptable employment and place of residence. This *plan must be firm,* and may not be changed without prior approval from the Probation Officer. It is your responsibility to have this plan confirmed with the employer and the person you will be living with before it is submitted. Errors or omission may result in your release date being extended.

## REGULATIONS FOR VISITORS

All residents are encouraged to have visitors. Visitor hours Saturday and Sunday and Holidays 9:00 a.m. – 12:00 p.m and 2:00 p.m. – 6:00p.m. **Visiting is closed between the hours of 12:00 a.m.–2:00 p.m.** Approved visitors must sign into the center upon arrival, and show proper picture identification. Visiting will be restricted to the designated visiting areas only. *Residents will be responsible for the behavior of their visitors. Children must be controlled so as not to bother other residents or guests.*

> **EX-INMATES AND OTHERS UNDER COURT SUPERVISION ARE NOT AUTHORIZED TO VISIT UNDER ANY CIRCUMSTANCES.**

Visitors must be 18 years of age, or accompanied by an adult. Staff at the facility reserves the right to refuse any visitor they deem inappropriate. All visitors must leave the facility by 6:00 p.m.

## RESIDENT RULES OF CONDUCT AND RESIDENT AUTHORITY

Because both men and women are accepted in the Taylor Street BOP Center, the following house rules apply:

1. Male residents are prohibited from entering the female rooms. Female residents are prohibited from entering the male rooms. **ANY VIOLATION OF THIS RULE WILL RESULT IN IMMEDIATE RETURN TO CUSTODY AND DISMISSAL FROM THE CENTER.**

2. All residents must be fully clothed when out of their room.

3. No displays of affection (physical contact) will be allowed.

> **NO RESIDENT OR GROUP OF RESIDENTS SHALL BE PLACED IN A POSITION OF CONTROL OR AUTHORITY OVER OTHER RESIDENTS.**

## FEDERAL BUREAU OF PRISONS
### Prohibited Acts (CSCs)

Note to CDC Chairman: Choice of recommended sanctions must coincide with the severity range of the infraction. Normally, the more severe infractions should carry greater penalties than those in the lower severity levels. Sanctions A, B, B. 1, C, D and F require CCM approval prior to imposition.

The Community Corrections Manager may increase the severity of sanction(s) recommended, but may not exceed the ranges specified.

More than one sanction may be imposed for a particular infraction.

### SEVERITY RANGE:

**100 = GREATEST**       **200 = HIGH**       **300 = MODERATE**       **400 = LOW**

Aiding another person to commit any of these offenses, ***attempting*** to commit any of these offenses, ***and making - plans*** to commit any of these offenses, in all categories of **severity, shall be considered the same as an omission of the offense itself.**

| CODE | PROHIBITED ACT | | SANCTIONS |
|------|----------------|------|-----------|
| 100 | Killing | A. | Recommend parole date rescission or retardation. |
| 101 | Assaulting any person (includes sexual assault). A charge for assaulting any person at this level is to be used only when serious physical injury has been attempted or carried out by an inmate. | B. | Forfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminated or disallow extra good time (an extra good time sanction may not be suspended). |
| 102 | Escape from escort; escape from a secure institution (low, medium, and high security level and administrative institutions); or escape from a minimum institution with violence. | B.1 | Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). |

| CODE | PROHIBITED ACT | SANCTIONS |
|------|----------------|-----------|
| 112 | Use of any narcotics, marijuana, drugs, or related paraphernalia not prescribed for the individual by medical staff. | Sanctions A-G |
| 113 | Possession of any narcotics, marijuana, drugs,or related paraphernalia not prescribed for the individual by the medical staff. | |
| 198 | Interfering with a staff member in performance of duties (Conduct must be of the Greatest Severity nature.)  This charge is to be used only when another charge of greatest severity is not applicable. | |
| 199 | Conduct which disrupts or interferes with the security or orderly running of the facility or the Bureau of Prisons. (Conduct must be of the Greatest Severity nature.) This charge is to be used only when another charge of greatest severity is not applicable. | |

| CODE | PROHIBITED ACT | | SANCTIONS |
|------|----------------|---|-----------|
| 213 | Encouraging others to refuse to work, or to participate in a work stoppage. | K. | Impound offender's personal property. |
| 214 | (Not to be used.) | L. | Confiscate contraband. |
| 215 | Introduction of alcohol into a facility or facility. | M. | Restrict to quarters. |
| 216 | Giving or offering an official or staff member a bribe, or anything f value. | | |
| 217 | Giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purpose. | | |
| 218 | Destroying, altering, or damaging facility property, or the property of another person, having a value in excess of $100, or destroying, altering, or damaging life-safety devices (e.g., fire alarms) regardless of financial value. | | |
| 219 | Stealing (theft; this includes data obtained through the unauthorized use of a communications facility, or through the unauthorized access to disks, tapes, or computer printouts or other automated equipment on which data is stored. | | |
| 220 | Demonstrating, practicing, or using martial arts, boxing (except for use of a punching bag), wrestling, or other forms of physical encounter, or military exercises or drill (except for drill authorized and conducted by staff). | | |
| 221 | Being in an unauthorized area with a person of the opposite sex without staff permission. | | |
| 222 | Making, possessing, or using intoxicants. | | |

| CODE | PROHIBITED ACT | | SANCTIONS |
|---|---|---|---|
| 300 | Indecent exposure. | A. | Recommend parol date rescission or retardation. |
| 301 | Not to be used. | | |
| 302 | Misuse of authorized medication. | B. | Forfeit earned statuatory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended.) |
| 303 | Possession of money or currency, unless specifically authorized, or in excess of the amount authorized. | | |
| 304 | Loaning of property or anything of value for profit or increase return. | | |
| 305 | Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through profit or increase return. | B.1 | Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended.) |
| 306 | Refusing to work, or to accept a program assignment. | C. | Disciplinary Transfer (recommend) |
| 307 | Refusing to obey an order of any staff member (may be categorized and charged in term of greater severity, according to the nature of the order being disobeyed; e.g., failure to obey an order which furthers a riot would be charged as 105, rioting; refusing to obey an order which furthers a fight would be charged as 201, fighting; refusing to provide a urine sample when ordered would be charged as Code 110). | D. | Disciplinary segregation. (up to 30 days) |
| | | E. | Make monetary restitution. |
| | | F. | Withhold statutory good time. |
| | | G. | Loss of privileges: commissary, movies, recreation, etc. |
| | | H. | Change quarters. |
| 308 | Violating a condition of a furlough. | I. | Removal from program and/or group activities. |
| 309 | Violation a condition of a community program. This will include failure or refusal to pay specified subsistence and/or accurately report monthly wages. | J. | Loss of job. Not applicable in a CSC. |
| 310 | Unexcused absence from work or any assignment. | | |

| CODE | PROHIBITED ACT | SANCTIONS |
|------|----------------|-----------|
| 327 | Unauthorized contacts with the public | Sanctions A-N |
| 328 | Giving money or anything of value to, or accepting money or anything of value from another offender or any other person without staff authorization. | |
| 329 | Destroying, altering or damaging property of another person, having a value of $100.00 or less. | |
| 330 | Being unsanitary or untidy; failing to keep one's person , having a value of $100.00 or less. | |
| 331 | Possession, manufacture, or introduction of a non-hazardous tool or other non-hazardous contraband (Tool not likely to be used in an escape or escape attempt, or to serve as a weapon capable of doing serious bodily harm to others, or not hazardous to institutional security or personal safety; other non-hazardous contraband includes such items as food or cosmetics) | |
| 398 | Interfering with a staff member in the performance of duties. (Conduct must be of the moderate severity nature). This charge is to be used only when another charge of moderate severity is not applicable. | |
| 399 | Conduct which disrupts or interferes with the security or orderly running of the facility. (Conduct must be of the moderate severity nature). This charge is to be used only when another charge of moderate severity in not applicable | |

| CODE | PROHIBITED ACT | SANCTIONS |
|------|----------------|-----------|
| 498 | Interfering with a staff member in the performance of duties. (Conduct must be of the moderate severity nature). This charge is to be used only when another charge of moderate severity is not applicable. | Sanctions B.1-P |
| 499 | Conduct which disrupt or interferes with the security or orderly running of the facility, (Conduct must be of the low moderate severity nature). This charge is to be used only when another charge of low moderate severity is not applicable. This includes such other requirements and acts as are prohibited by local facility regulations (as approved by CCM). | |

# EMERGENCY PLAN

**IN CASE OF FIRE OR SUSPICION OF FIRE:**

1.  If instructed, call 911.  Give your name, the address of the facility, the nature of the problem, and answer any other questions you are asked.  Allow them to hang up first.

2.  Exit building in the quickest and safest manner possible.

3.  Meet on the sidewalk to the left of this building and wait for staff instruction and emergency headcount.

4.  In the event of a false alarm, follow staff instruction.

# EMERGENCY PLAN

## IN CASE OF SEVERE WINDS OR WEATHER CONDITIONS:

1.  Stay indoors and away from windows.

2.  If wind or weather is extremely severe, proceed to basement with staff.

3.  Follow staff instructions.

4.  Turn on radio or TV to receive emergency information and instructions.