1

2

3

4

5

6

7                     UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

JORDAN ROSENBERG,

10

        Plaintiff,                          No. C 07-4690 PJH

11

    v.                                      **ORDER GRANTING MOTION**
                                            **TO DISMISS SECOND AMENDED**
12                                          **COMPLAINT**

13   CORNELL CORPORATION INC.,
     et al.
14
            Defendants.
15   _____/

16          Defendant Cornell Corporation's ("Cornell") motion to dismiss pro se plaintiff Jordan

17   Rosenberg's ("Rosenberg") second amended complaint ("SAC") came on for hearing

18   before this court on November 25, 2009.  Rosenberg appeared on his own behalf, and

19   Cornell appeared through its counsel, Sarah Beede of Lewis Brisbois Bisgaard & Smith

20   LLP.  Having read the parties' papers and carefully considered their arguments and the

21   relevant legal authority, the court GRANTS Cornell's motion.

22                                   **BACKGROUND**

23          This is a civil rights case brought by former federal prisoner, Rosenberg, against

24   Cornell, which operates a halfway house in San Francisco, and six Cornell employees.

25   Rosenberg originally filed the case in state court on January 19, 2007, and Cornell

26   subsequently removed the case to this court on September 12, 2007.  At that time,

27   Rosenberg had already filed a first amended complaint ("FAC") in state court.

28          Cornell subsequently filed a motion to dismiss with this court, and Rosenberg then

1  filed a motion to remand.  The court denied Rosenberg's motion to remand in its
2  September 30, 2008 order, in which the court also screened Rosenberg's FAC pursuant to
3  28 U.S.C. § 1915A(a), and dismissed nine of the ten claims raised in the FAC with leave to
4  amend, and one claim without leave to amend.  The court noted that since it was
5  dismissing the claims based on the screening, it would deny without prejudice Cornell's
6  motion to dismiss the FAC.

7      Rosenberg subsequently filed a SAC, a motion to quash the screening order, a
8  motion to remand, and a motion for entry of default.  In his motion to quash the screening
9  order, which Rosenberg stated he was submitting under penalty of perjury, he asserted that
10  he was not a prisoner at the time he filed the case in state court.  Cornell did not respond to
11  the motion to quash.

12      On August 27, 2009, the court denied Rosenberg's second motion to remand,
13  denied his motion for entry of default, but granted his motion to quash the September 30,
14  2008 screening order based on Rosenberg's undisputed statement under penalty of perjury
15  that he was not a "prisoner" at the time he filed his complaint.  The court noted that
16  although Rosenberg's original complaint and FAC stated that he resided at Cornell's
17  halfway house at all relevant times, they were silent regarding Rosenberg's status at the
18  time he filed the complaint in state court on January 19, 2007.  The August 27, 2009 order
19  also noted that the case was therefore no longer on the prisoner track (meaning that it first
20  required screening pursuant to 28 U.S.C. § 1915A(a)), and that Cornell should file an
21  answer to Rosenberg's SAC.

22      However, given Cornell's suggestion in its motion to dismiss the SAC that
23  Rosenberg should be required to exhaust his administrative remedies, the court's
24  observation that Rosenberg's original state court complaint was filed January 19, 2007, and
25  Cornell's prior assertion that Rosenberg was not released from the halfway house until
26  January 26, 2007, the court queried Rosenberg at the November 25, 2009 hearing as to
27  whether he resided at the halfway house on January 19, 2007.  Given Rosenberg's
28  response, it appeared that he indeed resided at the halfway house at the time he filed his

1   complaint in state court, and was therefore a prisoner under 28 U.S.C. § 1915A(a), which

2   would have required him to administratively exhaust his claims.  However, because

3   Rosenberg was not certain regarding his release date and also claimed that he

4   nevertheless exhausted his claims, the court permitted him to file a supplemental post-

5   hearing brief, which he did.  The court also permitted Cornell to respond to Rosenberg's

6   supplemental brief.

7           On November 30, 2009, Rosenberg filed an "ex parte application to withdraw filing"

8   and a response regarding exhaustion.  Rosenberg concedes that he was indeed a prisoner

9   at the time he filed his state court complaint, requests to withdraw his motion to vacate the

10  screening order, and apologizes to the court for the misinformation.  In addition to that

11  document, Rosenberg also filed a brief in which he stated that he exhausted his

12  administrative remedies, and to which he attached a number of additional documents.

13  Cornell filed its response on December 9, 2009, in which it argues that Rosenberg did not

14  fully exhaust his administrative remedies prior to filing his state court complaint.

15                                      **CLAIMS**

16          Rosenberg's SAC raises the following twelve claims, which consist of the ten claims

17  raised in his FAC, including the one that the court dismissed without leave to amend in the

18  subsequently-vacated September 30, 2008 screening order, plus an additional two claims.

19  The SAC, like his FAC, states that it is a "*Bivens*" action, arising in part from violations of

20  his rights under the United States Constitution, federal law, and federal regulations, in

21  addition to his rights under state law.  *Bivens v. Six Unknown Named Agents*, 403 U.S.

22  388 (1971).  Rosenberg's  twelve claims are as follows :

23          (1) *Bivens* action based on denial of access to the courts;

24          (2) *Bivens* action based on deliberate indifference to safety;

25          (3) *Bivens* action based on complaint against Rosenberg that violated his civil rights;

26          (4) *Bivens* action based on failure to record punishment duties;

27          (5) *Bivens* action based on confiscation of medication;

28          (6) *Bivens* action based on bedbugs;

1    (7) *Bivens* action based on miscalculation of recreation time;

2    (8) *Bivens* action based on job search;

3    (9) *Bivens* action based on denial of purchase of hygiene items;

4    (10) state law claim for fraud;

5    (11) state law claim for unfair and fraudulent business practices; and

6    (12) state law claim for violation of Consumer Legal Remedies Act.

7    Rosenberg seeks monetary damages in addition to unspecified declaratory and

8    injunctive relief.

9    **DISCUSSION**

10   **A.    Legal Standards**

11   **1.    Rule 12(b)(6)**

12   A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  A claim may be

13   dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in

14   support of his claim which would entitle him to relief.  *Navarro v. Block*, 250 F.3d 729, 732

15   (9th Cir. 2001).  Dismissal pursuant to Rule 12(b)(6) is appropriate where there is no

16   cognizable legal theory or there is an absence of sufficient facts alleged to support a

17   cognizable legal theory.  *Id.*  The issue is not whether a plaintiff is likely to succeed on the

18   merits but rather whether the claimant is entitled to proceed beyond the threshold in

19   attempting to establish his or her claims.  *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.

20   1978).

21   In evaluating a motion to dismiss, all allegations of material fact are taken as true

22   and construed in the light most favorable to the nonmoving party.  *See, e.g., Burgert v.*

23   *Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).  The court,

24   however, is not required to accept as true allegations that are merely conclusory,

25   unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State*

26   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Nor do courts assume the truth of legal

27   conclusions merely because they are cast in the form of factual allegations, *Western Mining*

28   *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981), or that a plaintiff can prove facts

4

1  different from those it has alleged.  *Associated General Contractors of California, Inc. v.*
2  *California State Council of Carpenters, Inc.*, 459 U.S. 519, 526 (1983).

3          In order to survive a motion to dismiss, a plaintiff must allege facts that are enough
4  to raise his right to relief "above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550
5  U.S. 544, 555 (2007).  While the complaint "does not need detailed factual allegations," it is
6  nonetheless "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'
7  [which] requires more than labels and conclusions, and a formulaic recitation of the
8  elements of a cause of action will not do." *Id.*  In short, a plaintiff must allege "enough facts
9  to state a claim to relief that is plausible on its face," not just conceivable. *Id.* at 570.

10         A claim has facial plausibility when the pleaded factual content allows the court to
11  draw the reasonable inference that the defendant is liable for the misconduct alleged.
12  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) (citing *Twombly*, 550 U.S. at 556).  Two
13  working principles underlie *Twombly*: (1) the tenet that a court must accept a complaint's
14  allegations as true is inapplicable to threadbare recitals of a cause of action's elements,
15  supported by mere conclusory statements; and (2) determining whether a complaint states
16  a plausible claim is context-specific, requiring the reviewing court to draw on its experience
17  and common sense.  *Id.* at 1940 (citing *Twombly*, 550 U.S. at 555-56).  In considering a
18  motion to dismiss, a court may begin by identifying allegations that, because they are mere
19  conclusions, are not entitled to the assumption of truth.  *Id.*  Legal conclusions can provide
20  the complaint's framework, but they must be supported by factual allegations.  *Id.*  When a
21  complaint contains well-pleaded factual allegations, a court should assume their veracity
22  and then determine whether they plausibly give rise to an entitlement to relief.  *Id.* at
23  1940-41.

24         **2.   *Bivens* Generally**

25         The Supreme Court's decision in *Bivens* authorizes a suit for damages against
26  federal officials for constitutional violations despite the absence of any federal statute
27  creating liability.  403 U.S. at 388.  To state a private cause of action under *Bivens* and its
28  progeny, a plaintiff must allege: (1) that a right secured by the Constitution of the United

1   States was violated; and (2) that the alleged deprivation was committed by a federal actor.

2   *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) (section 1983 and *Bivens* actions are

3   identical except for the replacement of a state actor under section 1983 by a federal actor

4   under *Bivens*).

5          In order for a *Bivens* remedy to be available, a defendant must be an individual

6   acting under federal governmental authority and the plaintiff must have no other alternative

7   remedy for the harm alleged.  *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70

8   (2001).  Both of these factors – an individual federal actor against whom there exists no

9   previous cause of action and a lack of any available alternative remedy – must be present.

10  *Id.*

11         **3.     Exhaustion**

12         The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321

13  (1996) ("PLRA"), amended 42 U.S.C. § 1997e, provides that "[n]o action shall be brought

14  with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

15  prisoner confined in any jail, prison, or other correctional facility until such administrative

16  remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  A federal prisoner

17  accordingly must exhaust all available administrative remedies with the Bureau of Prisons

18  ("BOP") before filing a *Bivens* claim in federal court.  *See Porter v. Nussle*, 534 U.S. 516,

19  524-25 (2002) (holding that revised § 1997e(a) applies to *Bivens* actions).

20  **B.     Cornell's Motion**

21         **1.     First Nine *Bivens* Claims**

22               **a.     Cornell Entity Liability**

23         Cornell argues, and Rosenberg concedes, that Cornell, the entity, cannot be sued

24  under *Bivens*, and also that it cannot be held liable under the doctrine of respondeat

25  superior.  *Terrell v. R.D. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991); *see also Malesko*,

26  534 U.S. at 71-72.  Accordingly, to the extent that Rosenberg's SAC asserted claims 1-9

27  against Cornell, those claims are dismissed.

28  ////

### b.    Cornell Individual Employees

Regarding the individual employees, Cornell argues that Rosenberg failed to exhaust his administrative remedies, and also that because Rosenberg concedes the employees are private actors, they cannot be sued under *Bivens.*

### i.    *Exhaustion Requirement*

Since Rosenberg was in Cornell's custody at the time he filed his complaint, he was required to administratively exhaust his *Bivens* claims.  *Talamantes v.  Leyva*, 575 F.3d 1021, 1023-24 (9th Cir.  2009); *Page v.  Torrey*, 201 F.3d 1136, 1138-39 (9th Cir. 2000).

Rosenberg attached sixteen separate single-paged documents to his supplemental brief in support of his argument that he exhausted his *Bivens* claims.  Because he did not file a declaration or otherwise identify each of the documents, the court is left to guess as to the identity of the documents.  Thirteen of the sixteen documents appear to constitute letters from Rosenberg to Maria Richards, the facilities director at Cornell, each of which includes a complaint.  The letters range in date from November 14, 2006 until December 19, 2006, and concern Rosenberg's complaints regarding the denials of his requests to leave the halfway house to look for a job and to obtain hygiene items by various Cornell employees, including Richards; refusals of his requests for library time; the denial of recreation time; the facility's fire drill procedures; and the confiscation of his personal items.  In addition to the thirteen letters to Richards, Rosenberg also submitted two letters addressed to "Job Developer" in which he complains about the time he was allowed "out," and also a letter addressed to the "Chief" of the "Fire Department," complaining about Cornell's fire drill procedures.

Rosenberg suggests that the letters demonstrate his attempt at informal resolution. He states that additional documents regarding exhaustion may exist, and that he "will seek them in discovery."  He further adds that the responses he received from the "job developers" are attached.  However, the only response appears to be an unidentified handwritten notation on a November 9, 2006 note from Rosenberg to a job developer stating "your 15th day is Nov.  20th."

1       In opposition, Cornell attaches its BOP Resident Program Handbook that governs

2    the halfway house Rosenberg resided in, along with a copy of the pertinent BOP

3    regulations.  Like Rosenberg, Cornell fails to submit a declaration and/or request for judicial

4    notice in conjunction with its two exhibits - and simply staples them to its supplemental

5    brief.  It argues that Rosenberg failed to fully exhaust his administrative remedies prior to

6    filing his complaint.  *Terrell*, 935 F.2d at 1015.

7       Cornell argues that the documents submitted by Rosenberg do not demonstrate that

8    he completely exhausted his administrative remedies pursuant to BOP guidelines, and also

9    contends that Rosenberg's letters do not constitute exhaustion of "informal resolution"

10   procedures because Rosenberg did not utilize the appropriate form, he failed to file any

11   administrative appeals, and failed to submit any of his grievances to the BOP regional

12   director or general counsel, or to Cornell's director or regional vice president.

13      The PLRA's exhaustion requirement applies equally to prisoners held in private or

14   government facilities.  *See Roles v. Maddox*, 439 F.3d 1016, 1017-18 (9th Cir. 2006).

15   Exhaustion is mandatory and no longer left to the discretion of the district court.  *Woodford*

16   *v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731 (2001)).  "Prisoners

17   must now exhaust all 'available' remedies, not just those that meet federal standards."

18   *Id.*  Even when the relief sought cannot be granted by the administrative process, i.e.,

19   monetary damages, a prisoner must still exhaust administrative remedies.  *Id.* at 85-86

20   (citing *Booth*, 532 U.S. at 734).

21      The court takes judicial notice of the fact that the BOP has established an

22   administrative remedy procedure governing prisoner complaints set forth at 28 C.F.R. §

23   542.10 *et. seq.*  Typically, an inmate must first attempt to resolve the issue informally by

24   presenting it to staff. 28 C.F.R. § 542.13.  An informal resolution attempt may be waived in

25   individual cases at the Warden or institution Administrative Remedy Coordinator's

26   discretion when the inmate demonstrates an acceptable reason for bypassing informal

27   resolution.  *Id.*  Additionally, the regulations provide that inmates in "Community Corrections

28   Centers" or "CCCs" are not required to attempt informal resolution.  § 542.13(b).

1    If dissatisfied with the response to an informal resolution attempt, the prisoner may

2   proceed with the formal filing of an Administrative Remedy Request ("ARR").  § 542.14.

3   The deadline for completion of informal resolution and submission of a formal written ARR,

4   on the appropriate form (BP-9), is twenty calendar days following the date on which the

5   basis for the ARR occurred.  *Id.*  Upon denial by the institution, the prisoner may appeal the

6   decision by filing a complaint with the Regional Director of the BOP.  § 542.15.  The

7   Regional Director's decision may be appealed to the General Counsel in Washington, D.C.

8   *Id.*  Appeal to the General Counsel is the final step in the administrative remedy process.

9   *Id.*

10   The court also takes judicial notice of the fact that Cornell's resident handbook sets

11   forth grievance procedures that are consistent with the BOP's own regulations.  Cornell

12   Suppl. Brief, Exh. 1 at 12-13.  The "Minor Sanctions" procedures appear to relate to the

13   informal resolution process set forth in § 542.10, while the "Major Sanctions" procedures

14   correspond to the formal filing of the ARR set forth in § 542.14.  *See id.*  Additionally, the

15   handbook provides a grievance process for programmatic complaints.  It states in pertinent

16   part:

17       If a resident believes a programmatic issue to be unfair or unsafe, they may
         attempt to find resolution in the following manner:
18
         The resident provides a written statement to the Facility Director.  If no
19       resolution can be reached, the resident may appeal to the Cornell Companies
         Division Director and then to the Cornell Companies Regional Vice President
20       in the same manner.

21       Resident [sic] are encouraged to attempt to resolve any grievance informally
         with the Facility Director before it is directed outside the facility.
22
*See id.*  at 13.
23
24   Cornell fails to address whether or not Rosenberg was in a CCC and thus exempt

25   from informal exhaustion requirements pursuant to § 542.13(b), and simply assumes that

     Rosenberg was required to informally exhaust his administrative remedies prior to formal
26
     exhaustion.  It appears to the court, though, that Cornell's facility *may* constitute a CCC,
27
     thus exempting Rosenberg from the informal process.  Cornell's resident program
28
     handbook notes that its facility provides three program components, including a CCC, a

1    pre-release component, and a home confinement component.  Cornell Suppl. Brief, Exh.  1

2    at 8.  Neither party has specified Rosenberg's program component.  However, in a prior

3    November 6, 2007 declaration filed with the court in conjunction with its motion to dismiss

4    Rosenberg's FAC, Cornell's facility director, Maria Richards, implied that Rosenberg

5    participated in the pre-release component.   Richard's November 6, 2007 Decl.  at ¶¶ 10-11

6    (describing Cornell's pre-release program).  Nevertheless, based on the record before it,

7    the court cannot be certain in which Cornell component Rosenberg participated.

8            However, regardless of whether Rosenberg was in a CCC, thus exempt from the

9    informal exhaustion procedures, the court finds that he failed to properly exhaust his

10   administrative remedies.  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the

11   PLRA uses the term 'exhausted' to mean what the term means in administrative law, where

12   exhaustion means proper exhaustion."   *Woodford*, 548 U.S. at 93. Therefore, the PLRA's

13   exhaustion requirement requires "proper exhaustion" of available administrative remedies.

14   *Id.*  "Proper exhaustion demands compliance with an agency's deadlines and other critical

15   procedural rules because no adjudicative system can function effectively without imposing

16   some orderly structure on the course of its proceedings."  *Id.* at 90-91.  In other words, the

17   PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise

18   procedurally defective administrative grievance or appeal."  *Id.* at 84. Furthermore,

19   administrative remedies may not be exhausted where the grievance, liberally construed,

20   does not have the same subject and same request for relief.  *See generally O'Guinn v.*

21   *Lovelock Correctional Center*, 502 F.3d 1056, 1062-63 (9th Cir. 2007) (even with liberal

22   construction, grievance requesting a lower bunk due to poor balance resulting from a

23   previous brain injury was not equivalent to, and therefore did not exhaust administrative

24   remedies for, claims of denial of mental health treatment in violation of the ADA and

25   Rehabilitation Act).

26           Rosenberg's failure to utilize the appropriate forms, comply with the deadlines, and,

27   more importantly, to appeal and/or seek relief from the regional director or general counsel

28   renders his *Bivens* claims unexhausted at all the levels available.  Claims 1-9 are therefore

1    DISMISSED for failure to exhaust.

2                    **ii.    *Cornell Employees' Status***

3            In its opening motion, Cornell argued that its employees were entitled to qualified

4    immunity because Rosenberg's *Bivens* claims do not rely on "clearly established rights."

5    *Somers v.  Thurman*, 109 F.3d 614, 617 (9th Cir.  1997).  In opposition, Rosenberg

6    responded that Cornell employees are not federal officials, but instead are the equivalent of

7    private prison guards, and therefore are not entitled to qualified immunity.  *See* Oppos.  at 4

8    (stating that "Cornell employees are private citizens employed by a private corporation").  In

9    reply, Cornell argues that given Rosenberg's concession that the employees are "private

10   citizens," he is not entitled to assert the *Bivens* claims against them.  *See Malesko*, 534

11   U.S. at 61.  The court agrees.

12           Neither the Supreme Court nor the Ninth Circuit have answered the question

13   regarding whether *Bivens* applies to employees of private corporations.  In *Malesko*, the

14   Supreme Court did not reach the question of the liability of employees of a private

15   correctional corporation.  534 U.S. at 61.  It is also not entirely clear how the Ninth Circuit

16   will resolve the issue.  In *Agyeman v. Corrections Corporation of America (CCA)*, the Ninth

17   Circuit observed that *Bivens* claims could be brought against individuals employed by CCA.

18   390 F.3d 1101 (9th Cir. 2004).  However, because the Ninth Circuit did not analyze the

19   issue but only referred to such liability in an example of the complexity of the pending case,

20   its precedent is questionable.  *See Cox v. Ashcroft*, 603 F.Supp.2d 1261 (E.D. Cal. 2009)

21   (refusing to resolve the liability of employees of a private correctional corporation where

22   complaint failed to state a cognizable claim).

23           The Ninth Circuit has, however, indicated recently its reluctance to extend *Bivens*

24   liability to any new context or category.  *See Western Radio Services Co. v. United States*

25   *Forest Service*, 578 F.3d 1116, 1120-21 (9th Cir. 2009) (citing *Malesko* and concluding that

26   *Bivens* liability should not be extended to allow the plaintiff to bring a Bivens action against

27   federal employees, officers of the United States Forest Service, for actions allegedly

28   violating the First and Fifth Amendments); *see also Peoples v. CCA Detention Centers*, 422

1  F.3d 1090 (10th Cir. 2005), *opinion vacated in part on rehearing*, 449 F.3d 1097 (10th Cir.

2  2006) (refusing to recognize a *Bivens* claim against individual employees of a private

3  corporation holding pretrial detainees pursuant to a contract with the federal government);

4  *Holly v. Scott*, 434 F.3d 287, 292 (4th Cir. 2006) (concluding that employees of a private

5  corporation under contract with the federal government could not be held liable under

6  *Bivens* because they were not "federal officials, federal employees, or even independent

7  contractors in the service of the federal government").

8        Because Rosenberg concedes that the Cornell employees are not federal actors, the

9  court concludes based on the above that dismissal of the *Bivens* claims is warranted on

10  this basis as well.

11                     **iii.    *Alternative Remedies***

12        The Supreme Court's decision in *Malesko* makes clear that to the extent state law

13  provides an adequate alternative remedy, no cause of action will be imposed under *Bivens*.

14  534 U.S. at 69.  This is true even if no other relief has been provided for under federal law.

15  *Id.; see also Corrections Corporation of America*, 442 F.3d at1103 (courts should not imply

16  a *Bivens* cause of action for a prisoner held in a private prison facility when there exists an

17  alternative cause of action arising under either state or federal law against the individual

18  defendant for the harm created by the constitutional deprivation).  The state law claims

19  included in Rosenberg's SAC clearly demonstrate the existence of alternative remedies,

20  and for this reason as well, Rosenberg's *Bivens* claims are DISMISSED.  This is the case

21  even if the court were to assume that Rosenberg properly raised and exhausted the *Bivens*

22  claims, and notwithstanding the complicated issue regarding whether or not the Cornell

23  employees are state actors.

24        Given the above three mutually exclusive bases for dismissing the *Bivens* claims,

25  the court declines to reach the merits of the nine individual *Bivens* claims.

26                     **2.    State Law Claims**

27        Having dismissed Rosenberg's nine *Bivens* claims, the court declines to exercise

28  supplemental jurisdiction over his three state law claims and dismisses them without

1   prejudice to Rosenberg's filing the claims in state court.  *See Ove v. Gwinn*, 264 F.3d 817,

2   826 (9th Cir. 2001).

3                                    **CONCLUSION**

4          For the reasons set forth above, the court GRANTS Cornell's motion to dismiss the

5   SAC.  Additionally, the court DENIES Rosenberg's separate November 30, 2009 ex parte

6   application to withdraw the filing of his prior motion to quash the screening order.  Because

7   the court already relied on that motion and the statements therein – and, in fact, granted

8   the motion – Rosenberg's current request to withdraw that motion is too late.

9

10  **IT IS SO ORDERED**.

11  Dated: December 17, 2009

12                                            _____

13                                            PHYLLIS J. HAMILTON
                                              United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28